UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRIDGESTONE AMERICAS, INC., <br><br> Plaintiff, <br> vs. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant. | Civil Docket No. 3:13-CV-1196 <br><br> JURY DEMANDED <br><br> Judge Sharp <br> Magistrate Judge Brown |

## PROPOSED INITIAL CASE MANAGEMENT ORDER

Pursuant to Local Rule 16.01(d)(2), the following Initial Case Management Plan is submitted to the Court and reflects the parties' agreement or, in the case of disagreement, respective positions, which will be addressed at the Case Management Hearing, currently scheduled for January 27, 2013.

**1.      Jurisdiction:**

The parties agree that jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332 because the action (1) involves a matter in controversy in excess of $75,000, exclusive of interest and costs; and (2) is between citizens of different states.

**2.      Plaintiff's Theory of The Case:**

BSAM is a major tire manufacturing company with operations in North and South America. IBM purports to be the world's leading information technology company with the best resources in every scientific, technological, and project management disciplines involved in designing and implementing fully integrated business application computer systems, including large distributed systems integrating heterogeneous business applications. In reliance on IBM's representations, BSAM hired IBM to design, develop, and implement such a system based on its purported

resources, capabilities, systems, methodologies, and tools. BSAM asserts several causes of action against IBM which stem from the project. BSAM's claims fall into four general categories: (1) fraud/misrepresentation; (2) violations of the Tennessee Consumer Protection Act ("TCPA"); (3) negligence; and (4) breach of contract.

BSAM's misrepresentations focus on: (1) assertions made by IBM to induce BSAM to enter into a series of contracts and to retain IBM as its SAP OTC implementation expert throughout the SAP OTC Project and (2) omissions of facts which IBM had a duty to disclose during the course of delivery of its services for BSAM. When seeking the contracts for the design and implementation of BSAM's largest and most important information technology project in company history, IBM asserted material facts to induce BSAM to hire and contract with IBM to provide all of the expertise and resources necessary for a North American implementation of an integrated order-to-cash system. IBM's assertions of fact included claims that it had: (1) a unique expertise to deliver the most comprehensive set of proven SAP implementation and legacy system integration resources in the world; and (2) a project leadership team it had already selected for BSAM's project which possessed all the specialized knowledge, skill, education, project experience, technical expertise, and qualifications to deliver a technologically current and effective solution for a fully integrated SAP OTC system for BATO's North American Operations. IBM charged BSAM over $68,000,000 for its expert services but delivered a fundamentally flawed integration design and implementation which crippled BSAM's ability to effectively conduct its business for months and caused extensive damage to BSAM's bottom line and reputation. But more fundamentally, IBM concealed and/or negligently failed to disclose material facts regarding development of the OTC system, including facts regarding the inadequacy of architecture, inadequate staffing, and risks of catastrophic failure. IBM's breaches proximately caused BSAM damages, including consequential damages.

### 3. **Defendant's Theory of The Case:**

Bridgestone contracted with IBM to assist in the design and implementation of a complex software system intended to help Bridgestone manage its business. It is referred to as the Order-to-Cash or OTC system and is described in more detail in IBM's pending Motion to Dismiss, filed on January 9, 2014. The project, which ran from 2009 - 2012, encountered difficulties staying on schedule and on budget. The parties recognized that each had contributed to the difficulties in certain ways. Because the initial contracts anticipated that a project of this magnitude and complexity was inherently challenging, they agreed to processes for making changes to resolve problems. During the project, the parties negotiated additional contracts in which they agreed to extend the schedule and expand the budget. The OTC system went live in early January 2012, at Bridgestone's insistence and over IBM's written and verbal objections that outlined the risks of going live before the project was fully ready. Bridgestone experienced problems managing its business in the first half of 2012, and IBM worked with Bridgestone to stabilize the system and respond to the issues.

In its complaint, Bridgestone alleges tort and statutory claims to evade important promises it made in its contracts. It promised that it was not relying on any alleged representations outside of the contracts and that it would not seek damages in excess of the fees paid to IBM. IBM asserts that Bridgestone should be required to honor its written promises and that the tort and statutory claims, which are baseless, should be dismissed. Finally, IBM will show that Bridgestone failed to fulfill its contractual obligations such that it was not ready to go live. Also, Bridgestone decided to go live against IBM's advice. During the project, when issues arose for which IBM accepted responsibility, it provided Bridgestone negotiated compensation, including reduced and no-fee professional services, of approximately $19 million which Bridgestone's complaint, which accepts zero responsibility, ignores. IBM denies all allegations of wrongdoing and all claims of damages.

4. **Identification of the Issues:**

   The parties do not dispute jurisdiction or venue.

   Plaintiff's claims are set out in the Complaint and include the following:

   Fraud in the inducement of contracts by IBM

   Negligent Misrepresentation in a business transaction

   Constructive Fraud

   Violation of the Tennessee Consumer Protection Act

   Gross Negligence

   Breach of Contract

   Defendant IBM disputes all liability and damages claims.

5. **Need for Other Claims or Special Issues Under Rules 13-15, 17-21 and rule 23 of the Federal Rules of Civil Procedure:**

   The deadlines for amendments to pleadings, counterclaims and motions to join additional parties, if any, are set forth in section 9, below.

6. **Witnesses:**

   To be addressed by each party's Initial Disclosures.

7. **Initial Disclosures and Staging of Discovery:**

   (a) **Confidentiality Agreement**. The parties have negotiated a confidentiality agreement or, alternatively, need the Court's assistance in finalizing a confidentiality agreement which includes a non-waiver provision regarding inadvertent production of privileged information.

   (b) **Initial disclosures** under Federal Rule of Civil Procedure 26 were tendered on December 20, 2013.

   (c) **Service.** The parties agree that all documents in the case (including pleadings and correspondence) will be served via email. Transmissions that are too large to be sent via email may be sent by other secure electronic means, or through first-class mail or express delivery, cover letters to be sent via email.

   (d) **Discovery, Generally.**

(i) Prior to filing any discovery-related motion the parties will schedule and conduct a telephone conference with the Magistrate Judge.

(e) **Written Discovery**.

(i) Interrogatories / RFPs / RFAs

(1) Interrogatories, requests for the production of documents, and requests for admission may be served beginning on January 3, 2014.

(2) Interrogatories will be limited to 30 per side, with each side reserving the right to seek more interrogatories for good cause.

a. Each party shall have the right to serve no more than 3 interrogatories immediately for purposes of identifying possible document custodians. Each side will endeavor to provide responses to those interrogatories by January 24, 2014 as per the parties' discussion on January 10, 2014. These three initial interrogatories will be included in the agreed limit of 30 interrogatories stated above.

(f) **Document Discovery** within ESI is addressed in detail in paragraph No. 3, below. The provisions of this proposed case management and discovery schedule are recommended to cover and replace the ESI requirements set out in Administrative Order 174.

(i) The parties agree that they will work together to accomplish efficient, effective, fair and economical document discovery.

(ii) The scope of Document Discovery and the duty to produce documents in a party's possession, custody, or control will be defined by document requests made under the Federal Rules of Civil Procedure.

(iii) Document discovery period:

(1) <u>Bridgestone Position:</u> The document discovery period will be from 12/1/2005 through 10/29/2013 (the date the complaint was filed) because that is the period for which Bridgestone has already begun collection and collection outside of this period will create delay.

(2) <u>IBM Position:</u> The document discovery period will be from 1/1/2005 through 10/29/2013 (the date the complaint was filed) because that discovery period was previously agreed to between the parties and because allegations in the complaint relate to that time period.

(iv) After Collection, all ESI will be searched for relevant documents utilizing both search terms, which the parties will exchange pursuant to the schedule provided below, as well as attorney review for responsiveness to pending

document requests and privilege. Any unresolved disputes will be resolved at the CMC.

(1) Custodial Document Discovery.

    a. All email of named custodians will be collected along with those custodians' additional ESI and traditional paper and other documentation.

    b. The parties have agreed to commence discovery of custodians' ESI (including email) and other documentation using lists of 20 individual custodians the parties have already exchanged.

    c. The parties have agreed that additional custodians (beyond the 20 initial individual custodians named above) can be submitted to the other for document production on a stated schedule. The parties, have not agreed to the specific number of additional custodians.

    d. The parties have agreed to a date to meet and confer in an attempt to arrive at the number of additional custodians, if any, beyond the 20 already exchanged, and to a schedule for completion of this phase of discovery subject to modification on motion by either party.

    e. Absent agreement the parties will promptly submit any dispute to the United States Magistrate Judge.

    f. Each party reserves the right to select replacement document custodians if the documents from custodians originally selected are not available. Each party reserves the right to seek discovery from additional custodians for good cause and upon such conditions as the Court may impose.

(2) With the exception of relevant documents held by identified custodians, production of all remaining documents responsive to the parties' document requests, whether stored electronically or in hard copy (excluding email only), will be produced as provided herein and in accordance with the Federal Rules of Civil Procedure.

(3) The parties agree, without waiving any other objections as to admissibility, that all electronic documents produced in discovery (*i.e.*, not hard-copy scans) are presumed to be authentic for purposes of this lawsuit only, absent a showing that the document is not what the proponent claims it to be.

(g) Depositions

    (i) Fact depositions of individuals will be limited to 30 of the opposing party's fact witnesses (third party depositions are not included in this limitation).

    (ii) Fact depositions will be limited to seven hours, except the parties agree that 5 of the 30 fact depositions may be extended to no more than 14 hours absent leave of court.

    (iii) Each party reserves the right to seek more than 30 depositions of the other's fact witnesses for good cause.

**8. ESI Document Discovery Procedures and Instruction:**

(a) Data Collection Guidelines

    (i) Data should be collected in accordance with the Federal Rules of Civil Procedure and generally accepted best practices for the collection of ESI in litigation.

    (ii) To eliminate likely unnecessary data collection and processing the following data collection guidelines are proposed for the initial collection. These guidelines may continue to be used throughout discovery; however, should evidence or further discovery reveal the need to revisit these collection protocols to request specific files, file types or other searches, the parties reserve the right to make such requests to the other in good faith.

(b) **ESI To Be Collected**

    (i) The following compound files will be mounted and searched:

        a. zip
        b. rar
        c. 7z
        d. tar
        e. gzip
        f. gz
        g. tgz

    (ii) **The following extensions will be collected**:

        a. **Archive:** gz, gzip, tgz, tar, rar, zip, 7z
        b. **Mail:** pst, msg
        c. **Adobe:** PDF, PS
        d. **Database:** db, dbf, mdb
        e. **Raw files:** css, csv, htm, html, mht, rtf, txt, tsv, xml, xsl
        f. **Lotus raw:** wbk, wk1, wk2, wk3, wk4, wkb, 123, wks, ntf
        g. **Open office:** sxd, sxc, ods, soc, odg, odp, soi, sxg, sxi, odf, odt, sdw, sow, sxw

h.  **Microsoft:**
    **-raw:** xls, xlt, xlw, doc, dot, wps, wri, pot, pps, ppt, mpp, mpt, pub, accdb, accde, accdr, accdt, mdb, wdb
i.  **-transcript:** xlsm, xltm, xlsx, xltx, xlc, xlam, docm, docx, dotm, dotx, ppsx ppsm, ppam, potx, pptm, potm, pptx, sldm, sldx, thmx, vsd, vsdx, vdx, vst, vss, tsx, vtx
j.  **Fax:** fax, tif, tiff
k.  **Graphics**: ai, bmp, cr2, emf, eps, gif, ithmb, jpg, jpe, jpeg, msp, pdd, png, ps, psd

(iii) **Deleted files will be collected from hard-drive trash cans/recycle bins. Deleted files will be produced in their current format only**.

(iv) **Data Collection – Locations and File Information Not Collected**

(v) **The following file locations will not be collected:**

a.  \Windows\
b.  \WinNT\
c.  \Program Files\
d.  \Program Files (x86)\
e.  \System Volume Information\
f.  \I386\
g.  \Temporary Internet Files\
h.  \History\
i.  \Cookies\
j.  \MSOCache\
k.  \Cygwin\
l.  \Lost Files\
m.  \Documents and Settings\All Users\
n.  \Documents and Settings\Default User\
o.  \Documents and Settings\LocalService\
p.  \Documents and Settings\NetworkService\
q.  \Users\All Users\
r.  \Users\Default\
s.  \Users\Default User\
t.  \Users\Public\
u.  \Users\All Users\
v.  \Users\Default\
w.  \Users\Default User\
x.  \Users\Public\

(vi) **Any file with a logical size of 0 (zero) will not be collected**.

(vii) **The following forensic descriptions will not be collected**:

a.  bad
b.  bitmap
c.  cluster

        d.     folder
        e.     internal
        f.     invalid
        g.     overwritten
        h.     physical disk
        i.     sector
        j.     stream
        k.     system
        l.     unallocated
        m.     volume

(viii) **Temporary internet files, including OLK <*> files, will not be collected**.

(ix) Audio and video files will not be collected as part of the general ESI collection. The parties reserve the right to request specific audio and/or video should they be identified during discovery

(c) E-Discovery Instructions

(i) Responsive Documents shall be produced in image format with searchable text and Concordance\Opticon load files. Families shall be produced consecutively, noting their family relationship to each other in the appropriate fields in the Concordance load file. The image format shall be single-page 300 DPI tiff images named after the Bates number assigned to the image. Additionally, there shall be a corresponding document-level text file, named after the beginning Bates number, associated with each Responsive Document produced. The source of the text in the text file should be based on the extracted text of the electronic file, except in the instances of Redacted Documents or Responsive Documents that are image-based. Redacted Documents, hard copy documents, and image-based electronic files should be OCR'd and such text should be provided as the document-level text file accompanying the production.

(ii) In the instance that a Responsive Document cannot be imaged or is an Excel file, you shall produce a slipsheet image noting that the file is being produced natively and actually produce the Responsive Document natively, named after the beginning Bates number of such Responsive Document.

(iii) The Concordance load file should contain the following information for electronic files:

    1.     Bates Begin
    2.     Bates End
    3.     Bates Begin Attach
    4.     Bates End Attach
    5.     Custodian (All related custodians to a document)
    6.     Record Type (ex. E-mail, Attachment, Loose File)
    7.     Email Subject
    8.     From

|       |       |                                                                                                       |
|-------|-------|-------------------------------------------------------------------------------------------------------|
|       | 9.    | To                                                                                                    |
|       | 10.   | CC                                                                                                    |
|       | 11.   | BCC                                                                                                   |
|       | 12.   | Date Sent                                                                                             |
|       | 13.   | Time Sent                                                                                             |
|       | 14.   | Filename                                                                                              |
|       | 15.   | Date Created                                                                                          |
|       | 16.   | Date Last Modified                                                                                    |
|       | 17.   | File Author                                                                                           |
|       | 18.   | File Extension                                                                                        |
|       | 19.   | MD5Hash                                                                                               |
|       | 20.   | Conversation Index (ID field that denotes what e-mails and attachments are part of the same e-mail thread) |
|       | 21.   | Original File Path                                                                                    |
|       | 22.   | Original Internal Folders                                                                             |
|       | 23.   | Confidentiality (Confidential, AEO, etc.)                                                             |
|       | 24.   | ATT Range                                                                                             |
|       | 25.   | Date and Time Received                                                                                |
|       | 26.   | Time Created                                                                                          |
|       | 27.   | Time Last Modified                                                                                    |
|       | 28.   | File Size                                                                                             |
|       | 29.   | Redaction                                                                                             |

(d) Privilege Logs

(i) Production of privilege logs will be staggered;

(ii) Privilege logs will be made available periodically through the rolling production of documents, with the final version due 60 days after the final production of each wave.

(iii) Each party's privilege logs shall indicate the names of attorneys and each party shall provide a separate list of attorney names and affiliations for reference purposes. Additionally, for email documents, the parties shall provide extractable email addresses on the privilege logs. To the extent that persons identified on the privilege logs have not been identified in initial disclosures or in responses to discovery, each party reserves the right to request additional information from the party producing the privilege log regarding the title/duties and employer of the person named.

9. **Case Management Deadlines:**

**December 20, 2013: Initial Disclosures**

(a) The parties made simultaneous initial disclosures; and,

(b) The parties exchange all or part (10) of an initial list of 20 custodians for whom email, all other ESI, and documents responsive to requests for production of

documents will be collected and searched following the Document Discovery procedures discussed infra.

**January 3, 2014:   Fact Discovery Opens**

(a)   Written discovery may be served;

(b)   Parties will simultaneously exchange proposed ESI search terms.

(c)   Early Depositions:

   (i)   <u>Bridgestone Position:</u> Plaintiff reserves the right to seek a 30(b)(6) deposition of IBM to determine the existence, identity, and location of witnesses, documents, and other tangible evidence as an aid in planning further discovery should the parties pre-discovery disclosures and interrogatories voluntarily exchanged prove insufficient.

   (ii)   <u>IBM Position:</u> IBM objects to inclusion of this provision. The parties previously agreed that there would be no provision regarding any early 30(b)(6) deposition in the Case Management Order and specifically negotiated and agreed upon a special interrogatory provision, which is currently under way (stated above in section 7(e)(i)(2)(a)), in lieu of any early 30(b)(6) deposition, which IBM believes would cause undue delay and burden at this early stage of discovery.

**January 9, 2014:   IBM files and serves its Response to the Bridgestone Complaint.**

**[_____]:   Search Terms**

(a)   <u>Bridgestone Position:</u> The parties will work to finalize search terms for use in identifying Custodial Documents for production as soon as possible.

(b)   <u>IBM Position:</u> Bridgestone previously proposed and agreed to January 24, 2014 as a deadline for finalization of search terms. On January 22, 2014, Bridgestone informed IBM that it would not be able to meet that deadline and could not provide another deadline for inclusion in the Case Management Order. IBM agrees to give Bridgestone an extension on this deadline and believes that a date for finalization of search terms should be set and included in the Case Management Order because several subsequent discovery dates are contingent upon the finalization process. Those dates are bracketed/blank below.

**January 27, 2014:   Case Management Conference in Nashville.**

**[_____]:   Non-Custodial Production**

(a)   Production of Non-Custodial Documents begins on a rolling basis.

(b)   Subsequent document requests made during fact discovery will be responded to as provided herein and in accordance with the Federal Rules of Civil Procedure.

**March 1, 2014:        Agreement on Additional Custodians**

(a)     The parties will meet and confer to determine number of custodians in second wave;

(b)     The parties will negotiate deadlines for second wave custodian production

(c)     If the parties cannot agree to number or deadlines for production of custodians matter will be promptly submitted to United States Magistrate Judge.

**May 1, 2014:  Amendments and Counterclaims**

(a)     Final day for filing motions to amend pleadings

(b)     Final day for filing of counterclaims

**[_____]:        Completion of Phase 1 Custodial Searches**

**June 2, 2014:  Motions to Join Additional Parties**

(a)     The parties may move for joinder of any additional parties based on matters raised in amendments or counterclaims.

**[_____]:        Parties May Notice Fact Depositions**

**March 2, 2015: Fact Discovery Closes**

**May 1, 2015:  Expert Discovery Opens; Plaintiff's Expert Reports Due**

(a)     Plaintiff to provide dates expert(s) will be available between May 1, 2015 and May 29, 2015.

**May 15 – 29, 2015:    Plaintiff's Experts Deposition Period**

**June 15, 2015:        Defendant's Expert Reports Due**

(a)     Defendant to provide dates expert(s) will be available between July 1, 2015 and July 15, 2013.

**July 1 – 15, 2015:    Defendant Experts Deposition Period**

**July 31, 2015: Plaintiff Expert Rebuttal Report Due**

(a)     Plaintiff to provide dates rebuttal expert(s) will be available between August 7, 2015 and August 14, 2014.

**August 7-14, 2015: Plaintiff's Rebuttal Expert Deposition Period**

**September 1, 2015: Expert Discovery Closes**

**September 30, 2015: Motions for Summary Judgment Due**

(a) If dispositive motions are filed early, the response and reply dates are moved up accordingly.

(b) Dispositive motions and response memoranda are limited to 25 pages; reply briefs are limited to five pages, absent Court permission for longer pleading.

**October 30, 2015:** **Briefs In Opposition to Summary Judgment Due**

**November 16, 2015: Reply Briefs In Support of Summary Judgment Due**

**February 17, 2016:** **Proposed Trial Date (Parties Currently Estimate a 5 week Trial)**

10. **Subsequent Case Management Conferences:**

The parties agree that the next case management conference will be scheduled by mutual agreement on or about March 14, 2014.

11. **Alternate Dispute Resolution:**

The parties engaged in a private mediation during much of 2013, which was not successful. The parties do not believe that further alternate-dispute-resolution efforts are appropriate at this time.

12. **Consent to Trial Before the Magistrate Judge:**

The parties do not consent to trial before the Magistrate Judge.

Dated: January 22, 2014                     Respectfully submitted,


                                            */s/ Daniel R. Lombard*
                                            Andrew R. McGaan, P.C.
                                            Christine P. Payne (*pro hac vice* to be submitted)
                                            Daniel R. Lombard
                                            KIRKLAND & ELLIS LLP
                                            300 North LaSalle Street
                                            Chicago, Illinois 60654
                                            Telephone: (312) 862-2000
                                            Facsimile: (312) 862-2200
                                            andrew.mcgaan@kirkland.com
                                            christine.payne@kirkland.com
                                            daniel.lombard@kirkland.com

                                            Robert J. Walker
                                            Jason W. Callen
                                            WALKER, TIPPS & MALONE PLC
                                            2300 One Nashville Place
                                            150 Fourth Avenue North
                                            Nashville, TN 37219
                                            Telephone: (615) 313-6000
                                            Facsimile: (615) 313-6001
                                            bwalker@walkertipps.com
                                            jcallen@walkertipps.com

                                            *Attorneys for International Business Machines Corporation, LLC*

# CERTIFICATE OF SERVICE

I, Daniel R. Lombard, one of the attorneys for Defendant International Business Machines Corporation, certify that I caused the foregoing Proposed Initial Case Management Order to be electronically filed with the Clerk of the Court on January 22, 2014, using the CM/ECF system, which will send notification to all counsel of record as listed below:

*Attorneys for Plaintiff*
Aubrey B. Harwell, Jr.
Aubrey B. Harwell, III.
Gerald D. Neenan
Neal & Harwell, PLC
One Nashville Place, Suite 2000
150 Fourth Avenue North
Nashville, TN 37219
Telephone: (615) 244-1713
Facsimile: (615) 726-0573

*Attorney for Plaintiff*
Charles F. Barrett,
Charles Barrett, P.C.
6518 Highway 100, Suite 210
Nashville, TN 37205
Telephone: (615) 515-3393
Facsimile: (615) 515-3395

*Attorney for Plaintiff*
Don Barrett
Barrett Law Group, P.A.
404 Court Square
Post Office Box 927
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628

*Attorney for Plaintiff*
C. Michael Ellingburg
Daniel Coker Horton &Bell
4400 Old Canton Road
Suite 400
Jackson MS 39211
Telephone: (601)969-7607
Facsimile: (601) 969-1116


    */s/ Daniel R. Lombard*
    Daniel R. Lombard