UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRIDGESTONE AMERICAS, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 3:13-1196 |
| v. | ) | Judge Sharp/Brown |
| | ) | Jury Demand |
| INTERNATIONAL BUSINESS | ) | |
| MACHINES CORPORATION, | ) | |
| | ) | |
| Defendant | ) | |

## CASE MANAGEMENT ORDER

Pursuant to Local Rule 16.01(d)(2), the following Initial Case Management Plan is adopted.

**1.** **Jurisdiction:**

The parties agree that jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332 because the action (1) involves a matter in controversy in excess of $75,000, exclusive of interest and costs; and (2) is between citizens of different states.

**2.** **Plaintiff's Theory of The Case:**

BSAM is a major tire manufacturing company with operations in North and South America. IBM purports to be the world's leading information technology company with the best resources in every scientific, technological, and project management discipline involved in designing and implementing fully integrated business application computer systems, including large distributed systems integrating heterogeneous business applications. In reliance on IBM's representations, BSAM hired IBM to design, develop, and implement such a system based on its purported resources, capabilities, systems, methodologies, and tools. BSAM asserts several causes of action against IBM which stem from the project. BSAM's claims fall into four general categories: (1)

1

fraud/misrepresentation; (2) violations of the Tennessee Consumer Protection Act ("TCPA"); (3) negligence; and (4) breach of contract.

BSAM's misrepresentations claims focus on: (1) assertions made by IBM to induce BSAM to enter into a series of contracts and to retain IBM as its SAP OTC implementation expert throughout the SAP OTC Project and (2) omissions of facts which IBM had a duty to disclose during the course of delivery of its services for BSAM. When seeking the contracts for the design and implementation of BSAM's largest and most important information technology project in company history, IBM asserted material facts to induce BSAM to hire and contract with IBM to provide all of the expertise and resources necessary for a North American implementation of an integrated order-to-cash system. IBM's assertions of fact included claims that it had: (1) a unique expertise to deliver the most comprehensive set of proven SAP implementation and legacy system integration resources in the world; and (2) a project leadership team it had already selected for BSAM's project which possessed all the specialized knowledge, skill, education, project experience, technical expertise, and qualifications to deliver a technologically current and effective solution for a fully integrated SAP OTC system for BSAM's North American Operations. IBM charged BSAM over $68,000,000 for its expert services but delivered a fundamentally flawed integration design and implementation which crippled BSAM's ability to effectively conduct its business for months and caused extensive damage to BSAM's bottom line and reputation. But more fundamentally, IBM concealed and/or negligently failed to disclose material facts regarding development of the OTC system, including facts regarding the inadequacy of architecture, inadequate staffing, and risks of catastrophic failure. IBM's breaches proximately caused BSAM damages, including consequential damages.

2

**3.    Defendant's Theory of The Case:**

Bridgestone contracted with IBM to assist in the design and implementation of a complex software system intended to help Bridgestone manage its business. It is referred to as the Order-to-Cash or OTC system and is described in more detail in IBM's pending Motion to Dismiss, filed on January 9, 2014. The project, which ran from 2009 - 2012, encountered difficulties staying on schedule and on budget. The parties recognized that each had contributed to the difficulties in certain ways. Because the initial contracts anticipated that a project of this magnitude and complexity was inherently challenging, they agreed to processes for making changes to resolve problems. During the project, the parties negotiated additional contracts in which they agreed to extend the schedule and expand the budget. The OTC system went live in early January 2012, at Bridgestone's insistence and over IBM's written and verbal objections that outlined the risks of going live before the project was fully ready. Bridgestone experienced problems managing its business in the first half of 2012, and IBM worked with Bridgestone to stabilize the system and respond to the issues.

In its complaint, Bridgestone alleges tort and statutory claims to evade important promises it made in its contracts. It promised that it was not relying on any alleged representations outside of the contracts and that it would not seek damages in excess of the fees paid to IBM. IBM asserts that Bridgestone should be required to honor its written promises and that the tort and statutory claims, which are baseless, should be dismissed. Finally, IBM will show that Bridgestone failed to fulfill its contractual obligations such that it was not ready to go live. Also, Bridgestone decided to go live against IBM's advice. During the project, when issues arose for which IBM accepted responsibility, it provided Bridgestone negotiated compensation, including reduced and no-fee professional services, of approximately $19 million which Bridgestone's complaint, which accepts zero responsibility, ignores. IBM denies all allegations of wrongdoing and all claims of damages.

3

Case 3:13-cv-01196   Document 76   Filed 05/20/14   Page 3 of 13 PageID #: 1596

4.  **Identification of the Issues:**

    The parties do not dispute jurisdiction or venue.

    Plaintiff's claims are set out in the Complaint and include the following:

    Fraud in the inducement of contracts by IBM

    Negligent Misrepresentation in a business transaction

    Constructive Fraud

    Violation of the Tennessee Consumer Protection Act

    Gross Negligence

    Breach of Contract

    Defendant IBM disputes all liability and damages claims.

5.  **Need for Other Claims or Special Issues Under Rules 13-15, 17-21 and rule 23 of the Federal Rules of Civil Procedure:**

    The deadlines for amendments to pleadings, counterclaims and motions to join additional parties, if any, are set forth in section 9, below.

6.  **Witnesses:**

    To be addressed by each party's Initial Disclosures.

7.  **Initial Disclosures and Staging of Discovery:**

    (a) **Confidentiality Agreement**. The parties are in the process of negotiating a confidentiality agreement and will notify the Court should they need the Court's assistance in finalizing a confidentiality agreement which includes a non-waiver provision regarding inadvertent production of privileged information.

    (b) **Initial disclosures** under Federal Rule of Civil Procedure 26 were tendered on December 20, 2013.

    (c) **Service.** The parties agree that all documents in the case (including pleadings and correspondence) will be served via email. Transmissions that are too large to be sent via email may be sent by other secure electronic means, or through first-class mail or express delivery, cover letters to be sent via email.

    (d) **Discovery, Generally.**

4

(i) Prior to filing any discovery-related motion the parties will schedule and conduct a telephone conference with the Magistrate Judge.

(e) **Written Discovery**.

    (i) Interrogatories / RFPs / RFAs

        (1) Interrogatories, requests for the production of documents, and requests for admission may be served beginning on **January 3, 2014**.

        (2) Interrogatories will be limited to **30** per side, with each side reserving the right to seek more interrogatories for good cause.

            a. Each party shall have the right to serve no more than **three** interrogatories immediately for purposes of identifying possible document custodians. Each side will endeavor to provide responses to those interrogatories by **January 24, 2014,** as per the parties' discussion on January 10, 2014. These three initial interrogatories will be included in the agreed limit of **30** interrogatories stated above.

(f) **Document Discovery** within ESI is addressed in detail in paragraph No. 3, below. The provisions of this proposed case management and discovery schedule are recommended to cover and replace the ESI requirements set out in Administrative Order 174.

    (i) The parties agree that they will work together to accomplish efficient, effective, fair and economical document discovery.

    (ii) The scope of Document Discovery and the duty to produce documents in a party's possession, custody, or control will be defined by document requests made under the Federal Rules of Civil Procedure.

    (iii) Document discovery period:

        (1) The document discovery period will be from 12/1/2005**,** through 10/29/2013 (the date the complaint was filed) because that is the period for which Bridgestone has already begun collection and collection outside of this period will create delay. However, the Defendant may request documents back to January 1, 2005, if a specific need arises.

    (iv) After Collection, ESI will be searched for relevant documents utilizing both search terms, (as detailed below) as well as attorney review for responsiveness to pending document requests and privilege. Any unresolved disputes will be resolved at the CMC.

5

(1) Custodial Document Discovery.

   a.  All email of named custodians will be collected along with those custodians' additional ESI and traditional paper and other documentation.

   b.  The parties have agreed to commence discovery of custodians' ESI (including email) and other documentation using lists of individual custodians the parties have already exchanged.

   c.  The parties initially agreed to exchange lists of 20 custodians and, on March 14, 2014, the Court ordered that the parties may select and exchange the names of up to 15 additional custodians, bringing the total to 35 per side. Subsequently, IBM named seven (beyond its initial 20), reserving eight and Bridgestone named seven (beyond its initial 20), reserving eight; the eight additional custodian names will be exchanged by **September 15, 2014**.

   d.  By **September 15, 2014**, for the last time, the parties will meet and confer regarding whether any additional custodians should be named (beyond the 35 custodians currently permitted). Each party desiring additional custodians will identify each one by name and explain why the particular custodian(s) should be added. If the parties cannot agree, disputes will be decided by the Magistrate.

   e.  Each party reserves the right to select replacement document custodians if the documents from custodians originally selected are not available. Each party reserve the right to seek discovery from additional custodians for good cause and upon such conditions as the Court may impose.

(2) Search Terms

   a.  Bridgestone will apply IBM's terms to its custodial ESI, where appropriate. IBM will apply Bridgestone's terms to its custodial ESI, where appropriate, with the exception that for any term that is also the name of an IBM custodian, IBM is not required to apply that term to the named custodian's documents.

   b.  Search terms will be applied to all custodial email, "p-drives," and hard drives, except that search terms will not be applied to sets of electronic custodial documents that have been specifically identified as potentially relevant and/or otherwise related to the OTC project. Document sources in this latter

category will be searched in their entirety for documents responsive to the parties' requests for production.

  c. Search terms will not be applied to non-custodial documents.

 (3) Non-Custodial Document Discovery

  a. With the exception of relevant documents held by identified custodians, production of all remaining documents responsive to the parties' document requests, whether stored electronically or in hard copy (excluding email only), will be produced as provided herein and in accordance with the Federal Rules of Civil Procedure.

 (4) The parties agree, without waiving any other objections as to admissibility, that all electronic documents produced in discovery (*i.e.*, not hard-copy scans) are presumed to be authentic for purposes of this lawsuit only, absent a showing that the document is not what the proponent claims it to be.

(g) Depositions

 (i) Fact depositions of individuals will be limited to **30** of the opposing party's fact witnesses (third party depositions are not included in this limitation).

 (ii) Fact depositions will be limited to **seven hours**, except the parties agree that **five** of the 30 fact depositions may be extended to no more than **14 hours** absent leave of court.

 (iii) Each party reserves the right to seek more than 30 depositions of the other's fact witnesses for good cause.

## 8. ESI Document Discovery Procedures and Instruction:

(a) Data Collection Guidelines

 (i) Data should be collected in accordance with the Federal Rules of Civil Procedure and generally accepted best practices for the collection of ESI in litigation.

 (ii) To eliminate likely unnecessary data collection and processing the following data collection guidelines are proposed for the initial collection. These guidelines may continue to be used throughout discovery; however, should evidence or further discovery reveal the need to revisit these collection protocols to request specific files, file types or other searches, the parties reserve the right to make such requests to the other in good faith.

7

(b) **ESI To Be Collected**

    (i)    The following compound files will be mounted and searched:

        a.    zip
        b.    rar
        c.    7z
        d.    tar
        e.    gzip
        f.    gz
        g.    tgz

    (ii)    **The following extensions will be collected**:

        a.    **Archive:** gz, gzip, tgz, tar, rar, zip, 7z
        b.    **Mail:** pst, msg
        c.    **Adobe:** PDF, PS
        d.    **Database:** db, dbf, mdb
        e.    **Raw files:** css, csv, htm, html, mht, rtf, txt, tsv, xml, xsl
        f.    **Lotus raw:** wbk, wk1, wk2, wk3, wk4, wkb, 123, wks, ntf
        g.    **Open office:** sxd, sxc, ods, soc, odg, odp, soi, sxg, sxi, odf, odt, sdw, sow, sxw
        h.    **Microsoft:**
            **-raw:** xls, xlt, xlw, doc, dot, wps, wri, pot, pps, ppt, mpp, mpt, pub, accdb, accde, accdr, accdt, mdb, wdb
        i.    **-transcript:** xlsm, xltm, xlsx, xltx, xlc, xlam, docm, docx, dotm, dotx, ppsx ppsm, ppam, potx, pptm, potm, pptx, sldm, sldx, thmx, vsd, vsdx, vdx, vst, vss, tsx, vtx
        j.    **Fax:** fax, tif, tiff
        k.    **Graphics**: ai, bmp, cr2, emf, eps, gif, ithmb, jpg, jpe, jpeg, msp, pdd, png, ps, psd

    (iii)    **Deleted files will be collected from hard-drive trash cans/recycle bins. Deleted files will be produced in their current format only**.

    (iv)    **Data Collection – Locations and File Information Not Collected**

    (v)    **The following file locations will not be collected:**

        a.    \Windows\
        b.    \WinNT\
        c.    \Program Files\
        d.    \Program Files (x86)\
        e.    \System Volume Information\
        f.    \I386\
        g.    \Temporary Internet Files\
        h.    \History\

        i.      \Cookies\
        j.      \MSOCache\
        k.      \Cygwin\
        l.      \Lost Files\
        m.     \Documents and Settings\All Users\
        n.     \Documents and Settings\Default User\
        o.     \Documents and Settings\LocalService\
        p.     \Documents and Settings\NetworkService\
        q.     \Users\All Users\
        r.      \Users\Default\
        s.      \Users\Default User\
        t.      \Users\Public\
        u.     \Users\All Users\
        v.      \Users\Default\
        w.    \Users\Default User\
        x.      \Users\Public\

(vi) **Any file with a logical size of 0 (zero) will not be collected**.

(vii) **The following forensic descriptions will not be collected**:

        a.      bad
        b.      bitmap
        c.      cluster
        d.      folder
        e.      internal
        f.      invalid
        g.      overwritten
        h.      physical disk
        i.      sector
        j.      stream
        k.      system
        l.      unallocated
        m.     volume

(viii) **Temporary internet files, including OLK <*> files, will not be collected**.

(ix) Audio and video files will not be collected as part of the general ESI collection. The parties reserve the right to request specific audio and/or video should they be identified during discovery

(c) E-Discovery Instructions

(i) Responsive Documents shall be produced in image format with searchable text and Concordance\Opticon load files. Families shall be produced consecutively, noting their family relationship to each other in the appropriate fields in the Concordance load file. The image format shall be

single-page 300 DPI tiff images named after the Bates number assigned to the image. Additionally, there shall be a corresponding document-level text file, named after the beginning Bates number, associated with each Responsive Document produced. The source of the text in the text file should be based on the extracted text of the electronic file, except in the instances of Redacted Documents or Responsive Documents that are image-based. Redacted Documents, hard copy documents, and image-based electronic files should be OCR'd and such text should be provided as the document-level text file accompanying the production.

(ii) In the instance that a Responsive Document cannot be imaged or is an Excel file, you shall produce a slipsheet image noting that the file is being produced natively and actually produce the Responsive Document natively, named after the beginning Bates number of such Responsive Document.

(iii) The Concordance load file should contain the following information for electronic files:

1. Bates Begin
2. Bates End
3. Bates Begin Attach
4. Bates End Attach
5. Custodian (All related custodians to a document)
6. Record Type (ex. E-mail, Attachment, Loose File)
7. Email Subject
8. From
9. To
10. CC
11. BCC
12. Date Sent
13. Time Sent
14. Filename
15. Date Created
16. Date Last Modified
17. File Author
18. File Extension
19. MD5Hash
20. Conversation Index (ID field that denotes what e-mails and attachments are part of the same e-mail thread)
21. Original File Path
22. Original Internal Folders
23. Confidentiality (Confidential, AEO, etc.)
24. ATT Range
25. Date and Time Received
26. Time Created
27. Time Last Modified

10

28. File Size
                29. Redaction

    (d) Privilege Logs

        (i)   Production of privilege logs will be staggered;

        (ii)  Privilege logs will be made available periodically through the rolling production of documents, with the final version due 60 days after the final production of each wave.

        (iii) Each party's privilege logs shall indicate the names of attorneys and each party shall provide a separate list of attorney names and affiliations for reference purposes. Additionally, for email documents, the parties shall provide extractable email addresses on the privilege logs. To the extent that persons identified on the privilege logs have not been identified in initial disclosures or in responses to discovery, each party reserves the right to request additional information from the party producing the privilege log regarding the title/duties and employer of the person named.

9. **Case Management Deadlines:**

    **December 20, 2013:**            **Initial Disclosures**

    (a) The parties made simultaneous initial disclosures; and

    (b) The parties exchange all or part (10) of an initial list of 20 custodians for whom email, all other ESI, and documents responsive to requests for production of documents will be collected and searched following the Document Discovery procedures discussed infra.

    **January 3, 2014:**              **Fact Discovery Opens**

    (a) Written discovery may be served;

    (b) Parties will simultaneously exchange proposed ESI search terms.

    **January 9, 2014:**              **IBM files and serves its Response to the Bridgestone Complaint.**

    **January 27, 2014:**             **Case Management Conference in Nashville.**

    **March 13, 2014:**               **Telephonic Status Hearing**

    **April 16, 2014:**               **Search Terms**

11

(a) The parties finalized search terms for use in identifying Custodial Documents for production.

**June 7, 2014:** **Non-Custodial Production**

(a) Production of Non-Custodial Documents begins on a rolling basis.

(b) Subsequent document requests made during fact discovery will be responded to as provided herein and in accordance with the Federal Rules of Civil Procedure.

**August 10, 2014:** **Amendments and Counterclaims**

(a) Final day for filing motions to amend pleadings

(b) Final day for filing of counterclaims

**October 1, 2014:** **Completion of Production for custodial documents from first 20 custodians selected pursuant to Section 7(f)(iv)(1)(c)**

**September 13, 2014:** **Motions to Join Additional Parties**

(a) The parties may move for joinder of any additional parties based on matters raised in amendments or counterclaims.

**October 21, 2014:** **Parties May Notice Fact Depositions**

**October 26, 2014:** **Custodians will be finalized subject to the terms of this CMO.**

**June 10, 2015:** **Fact Discovery Closes**

**August 10, 2015:** **Expert Discovery Opens; Plaintiff's Expert Reports Due**

(a) Plaintiff to provide dates expert(s) will be available between August 24, 2015, and September 7, 2015.

**August 24-September 7, 2015:** **Plaintiff's Experts Deposition Period**

**September 26, 2015:** **Defendant's Expert Reports Due**

(a) Defendant to provide dates expert(s) will be available between October 10, 2015, and October 24, 2015.

**October 10-24, 2015:** **Defendant Experts Deposition Period**

12

**November 9, 2015:**            **Plaintiff Expert Rebuttal Report Due**

(a)      Plaintiff to provide dates rebuttal expert(s) will be available between November 16, 2015, and November 23, 2015.

**November 16-23, 2015:**        **Plaintiff's Rebuttal Expert Deposition Period**

**December 12, 2015:**         **Expert Discovery Closes**

**January 25, 2016:**           **Motions for Summary Judgment Due**

(a)      If dispositive motions are filed early, the response and reply dates are moved up accordingly.

(b)      Dispositive motions and response memoranda are limited to **25 pages**; reply briefs are limited to **five pages**, absent Court permission for longer pleading.

**February 8, 2016:**           **Briefs In Opposition to Summary Judgment Due**

**February 24, 2016:**          **Reply Briefs In Support of Summary Judgment Due**

**10.**      **Alternative Dispute Resolution:** The parties engaged in a private mediation during much of 2013, which was not successful. The parties do not believe that further alternative-dispute-resolution efforts are appropriate at this time.

**11.**      **Consent to Trial Before the Magistrate Judge:** The parties do not consent to trial before the Magistrate Judge.

**12.**      **Subsequent Case Management Conferences:** A telephone conference with Magistrate Judge Brown to discuss case progress is set for **December 15, 2014**, at **10:00 a.m. To participate in the conference call, parties will call 615-695-2851 at the scheduled time.**

**13.**      **Trial Date:** The parties estimate that this jury trial will take five weeks, depending on what issues remain for trial. After consulting with Judge Sharp's courtroom deputy, this matter is set for trial on **July 12, 2016, at 9:00 a.m.** Judge Sharp will conduct a final pretrial conference on **June 27, 2016, at 1:30 p.m.** Judge Sharp will issue a separate order covering his requirements for the final pretrial conference and the trial.

It is so **ORDERED**.

                                               /s/    Joe B. Brown
                                               JOE BROWN
                                               UNITED STATES MAGISTRATE JUDGE